# Theodore Rohm, Plff. in Err., v. Joseph H. Borland.

The owner of stolen goods can recover their value from a person who has received them, notwithstanding such person has been acquitted of the criminal charge of having received such goods knowing them to have been stolen.

The testimony of confessed thieves, as to the quantity of stolen goods delivered by them to the defendant, in a civil action for their value, is proper

Cited in Morch v. Raubitschek, 159 Pa. 559, 562, 33 W. N. C. 568, 28 Atl. 369; Com. v. Cornelly, 7 (Pa.) Super. Ct. 77, 81, 42 W. N. C. 36.

NOTE.—The institution of criminal proceedings does not bar civil actions arising from the same facts, though the former be for a felony.    Act March 31, 1860 (P. L. 427 § 71).    So a warrant of arrest may issue under the act of 1842, though the defendant has been previously acquitted of the criminal charge based on the same transaction.    Morch v. Raubitschek, 159 Pa.

to be submitted to the jury against the defendant, accompanied by remarks of the court calling attention to the facts affecting the credibility of such witnesses.

(Argued November 3, 1886.  Decided November 15, 1886.)

October Term, 1886, No. 142, W. D., before GORDON, PAX-SON, TRUNKEY, STERRETT, and GREEN, JJ.  Error to the Common Pleas No. 2 of Allegheny County to review a judgment on a verdict for plaintiff in an action of attachment in case.  Affirmed.

This action was brought by J. H. Borland against Theodore Rohm to recover the value of a number of cases of shoes alleged to have been stolen from plaintiff by two of his employees, namely:  Weisse, the shipping agent, and Orth, a driver, and received by defendant.  The principal witnesses in plaintiff's favor were said Weisse and Orth, who had confessed the theft.

The court, WHITE, P. J., charged the jury as follows:

"This is a civil action, not a criminal prosecution.  From the evidence it appears that the defendant was indicted in the criminal court for receiving stolen goods, knowing them to have been stolen, and on that indictment the jury returned a verdict of 'not guilty.'  [That verdict is conclusive in that case, that he was not guilty of receiving stolen goods as charged in that indictment.  It is not conclusive in this case.]  This is a civil action against him to recover the value of the goods alleged to have been received by him from Weisse and Orth, the two employees in the store of the plaintiff.

"In criminal cases a jury must be satisfied beyond a reasonable doubt before there can be a conviction; and however strongly they may be inclined to believe a party guilty and actually may believe him guilty, yet if the evidence is not sufficient to

559, 33 W. N. C. 568, 28 Atl. 369.  Nor is the criminal prosecution barred by the fact that a civil proceeding is pending when the indictment is found. Foster v. Com. 8 Watts & S. 77; Com. v. Hurd, 177 Pa. 481, 35 Atl. 682; Com. v. Taylor, 12 Pa. Co. Ct. 326, 2 Pa. Dist. R. 743.  But the relief will not be duplicated, and where the real plaintiff in the criminal proceeding is the injured party, and not the commonwealth, and redress has been had in the civil action, it will be refused in the former.  Thus, where alimony has been awarded in a divorce proceeding, an order of support will not be granted in a desertion proceeding.  Com. ex rel. Tinkler v. Tinkler, 11 Pa. Dist. R. 111.

remove all reasonable doubt, their duty is to acquit. In a civil action the rule is different. Here the jury must give a verdict according to the weight or preponderance of evidence; and no matter what doubt or uncertainty there may be, the jury cannot withhold a verdict because there may be a reasonable doubt in the case. They are bound to solve that doubt, and if the preponderance of evidence is against the defendant they will render a verdict against him in a civil action. The burden of proof is always upon the plaintiff to make out a case. The defendant here is charged with having received ten cases of shoes of the value of at least $60 a case. The testimony, as I understood it, is that such cases as it is alleged these were, were selling at from $60 to $80 apiece, $60 being a low average. It is alleged that the defendant received at least ten cases, which would aggregate from $600 to $800. [Both Weisse and Orth, I think, testified as to this: Weisse fixing it at ten, at least, and I think Orth said from eight to ten cases of shoes were delivered to defendant.]

"Defendant denies, in the first place, that he received any goods, knowing them to have been stolen. He denies having received the amount of goods or the number of boxes testified to, but admits that he received two boxes from Orth, which he says he received at the house of Orth; says that Orth had taken them to his (defendant's) store; but for some reason they had not been left there; that Orth took them to his own house and defendant went there and took them from there to his own store, and said that he paid Orth $30 for one box and $35 for the other; that Orth told him he had bought the goods at auction and that they were his goods. I think he (defendant) said he had given $30 for the box that Orth said had cost $34, but that he (Orth) had more than he wanted and wanted to sell them.

"Now a man cannot get good title to property by buying it from a thief. If a man steals your horse or watch and sells it to an innocent man, who buys it in good faith, paying the theif full value for it, you do not lose your property, because it has been stolen. You can follow and take it wherever you find it. It may have passed through a dozen hands and a dozen men may have paid full value for it, and yet if the property was stolen from you, you can follow it and take it. A moment's reflection and the application of a little common sense will show you the justice of the rule that a thief may not steal property and there-

by get a good title to it. A man who buys any personal property must look out from whom he buys it, and must be satisfied that the man owns the property, or can give him a good title; and if he does not—if he buys on the strength of a lie—he must abide the consequences.

"Of course he can, in turn, compel the person to refund the money paid or prosecute him, but he cannot hold on to the property. Any property stolen from the plaintiff by his employees and sold to the defendant for full value could be claimed by the plaintiff, and by an action of replevin could be recovered and taken out of defendant's possession, or he can sue him and recover the value of it, where he has made a demand for the return of the article and it has been refused. It is not always necessary to identify every article that may be stolen. Of course in a criminal prosecution the jury must be satisfied that the article laid in the indictment was stolen. There must be some identification of it. It is not necessary always that it should be produced in court. A thief may sometimes destroy it or dispose of it, and it would be impossible therefore to produce it, but the jury must be satisfied that the article came into the possession of the party indicted. So if a man is seen selling a box of shoes or boots, if there is evidence that that box was filled with boots and shoes of some kind [it is not necessary to prove the identical boots and shoes. The thief may have disposed of them, or the party to whom he sold may have sold them. But of course there must be evidence that there were boots and shoes stolen, and then evidence as to the value of the articles.]

"Now the defendant denies that he received any more than these two boxes from Orth or from Weisse. He says he bought a great many shoes at Borland's, both at auction and at private sale. When he wanted a pair of shoes, or two or three pairs, he says he would go there and buy them, and that for shoes he purchased in that way he got no bill, but when he bought a large quantity he generally got bills. I think he said he received no bills for shoes which he purchased at auction, but says he has about two dozen bills at his home for purchases made at plaintiff's store, and claims that most of the bills are destroyed. The testimony of both the defendant and of Mr. M'Gowan, manager of plaintiff's store, is that at the time of the detection of this larceny, which I believe was in August of last year, defendant had in his store in the neighborhood of $1,500 worth of goods

that defendant says were bought, or gotten improperly as Mr. M'Gowan says. Defendant says he bought no boots or shoes anywhere else, all of his stock having come from the store of the plaintiff, except a small quantity made by himself. [Now, did he buy these goods in the store in the regular way of buying boots and shoes, or did a large portion of that stock come surreptitiously and fraudulently through Mr. Borland's employees? If the goods were purloined by them and sold to defendant, he is responsible for their value, whether he knew they were stolen or not, because they were not sold by the employees in a way in which they would be authorized to sell.] If he bought them in the store and paid a reasonable price for them in the store, and the employees pocketed the money, that, of course, would not affect him. But if he knew that these goods were being shipped to him out of the regular course of business, and he not buying and paying for them in the regular course of business, he would know there was something wrong. Is it customary for goods to be shipped from a store by an employee or drayman with no bill sent; no dray bill to be signed; no receipt for money, and the money paid to the drayman or employee? These are questions bearing upon the inquiry as to whether the defendant did not know or suspect that something was wrong in the transaction.

"I repeat, gentlemen, that whatever goods were stolen from plaintiff, and went into possession of Mr. Rohm, the defendant, although he may have paid either Orth or Weisse for them, yet he is responsible to the plaintiff for their value. Any other principle of law would enable men to replenish their stock or set up a stock of goods by the corruption of some of the employees of an establishment and lead to a vast amount of plunder on their part. As I have said men may buy any article, but must buy at their peril, and must know that the party from whom they buy owns the article and has a right to sell it. That is a principle that it is absolutely necessary should be sustained so that business men and others may be cautioned from encouraging employees to steal from their employers and sell the stolen property. The buyer may not be liable to a criminal prosecution unless he knows the property was stolen, but would be liable to the owner for the full value. It is very seldom that a thief, when he wants to sell an article, will say, 'I stole this,' but very frequently he will lie about it; but a prudent and cautious business man would be careful about buying where the circumstan-

ces of the case were suspicious, and where the article is not sold in the usual and ordinary way.

"If you find for the plaintiff, it will be for you to say in what amount. Of course, under the circumstances of the case, it would be difficult for the plaintiff to prove the precise number or value of the articles stolen. You must get at that from the testimony of these two men, who admit that they were thieves. They have been indicted and pleaded guilty as thieves in the criminal court. Of course the testimony of a *particeps criminis* is always to be received with caution. Sometimes when a man gets into trouble himself he wants to involve others. Such testimony is to be received with suspicion, but not rejected. It must be considered by the jury along with other testimony, and it will be for you to say upon all the evidence in the case, taking the amount of stock in the store and the failure to account for it, except by the claim of the defendant that he bought all of the goods. If he had produced bills of sale for anything like the amount of stock he had on hand, it would have been a very strong corroboration of his statement, but we have only his word—under oath, it is true—that he purchased everything. A man's testimony must be regarded often in the light of his interest. Where a man has a deep interest involved his testimony must be received with more caution than that of one with no interest. The whole testimony must be considered by you, and if you are not satisfied from the evidence that the defendant received any goods from this establishment except what he paid for in the regular way, your verdict should be for the defendant. If you find that he did receive stolen goods, whether he knew them to have been stolen or not, he is responsible to the plaintiff for their full value, whether he paid for them or not."

The jury returned a verdict for plaintiff, upon which judgment was entered, and defendant took this writ, assigning as error the portions of the charge inclosed in brackets.

*John R. Large* and *J. D. Ramsey* for plaintiff in error.

*C. C. Dickey, R. A. Johnston,* and *W. K. Shiras* for defendant in error.

PER CURIAM:
An examination of the charge of the learned judge of the

court below creates in us some surprise that exception should have been taken to it.

That the owner of stolen goods should not have an action for them, because on an indictment in the quarter sessions the receiver was acquitted of the charge of having knowingly received them from the hands of the thief, is a proposition as false as it is novel. The learned judge well said: "The man who buys personal property must look out from whom he buys it." This is a principle alike of law and common sense, for even the most simple know that a thief has no title to transmit to anyone, and that though the purchaser may not have known that he was buying stolen goods he cannot defend against the owner. So, we cannot see what error there was in directing the attention of the jury to what Weisse and Orth had sworn as to the quantity of the goods which they had turned over to the defendant.

There is no exception to its admission, and it is not misquoted, so that the only reason we can discover for the objection is that it was the testimony of thieves. But as the court called the attention of the jury to this fact, as a matter affecting the credibility of the witnesses, we cannot see what else could have been done, and if the jury preferred to believe them rather than Rohm, that was the fault of that body, and not of the court.

The judgment is affirmed.